Case 1:22-mj-00238-MAU   Document 1-1   Filed 11/03/22   Page 1 of 7

Case: 1:22–mj–00238
Assigned To Magistrate Judge: Upadhyaya, Moxila A.
Assign. Date : 11/3/2022
Description: Complaint w/ Arrest Warrant

## STATEMENT OF FACTS

1. On October 14, 2022, members of the Metropolitan Police Department's ("MPD") First District Crime Suppression Team ("CST") were patrolling Patrol Service Area 105 in full uniform. Officers D. Hugee (driver), A. Tso (front passenger), and S. Modlin (rear passenger) were operating a marked Metropolitan Police Department Dodge Charger. All three officers were equipped with police body-worn cameras.

2. At approximately 2046 hours, while driving behind the rear of the Greenleaf Recreation Center, located at 201 N St SW, Washington, D.C. 20024, Officer Hugee observed several males wearing dark clothing standing around a Toyota Camry bearing Virginia tags of TYH2467 (the "Subject Vehicle"). The Subject Vehicle was backed into a parking space along the semi-circle at the rear of the recreation center. From afar, Officer Hugee shined the spotlight into several vehicles parked in the same area to see if they were occupied. At the time the spotlight illuminated the Subject Vehicle, Officer Hugee observed that it was occupied by a male.



*Figure 1 – Semi-circle behind Greenleaf Recreation Center with Subject Vehicle circled in red*

3. Officer Hugee then continued driving south into the parking area behind the recreation center (the street segment in the top right of the above image). Upon observation of police presence, the males, including the Suspect who was initially seated in the driver's seat of the Subject Vehicle, began to quickly distance themselves from the car and disperse into the park area. Officer Hugee then turned around and came back to the area where the Subject Vehicle was parked.

4. The officers exited the marked police vehicle and conducted a plain view search of the now-unoccupied Subject Vehicle by shining their flashlights into the vehicle. Officer Hugee observed a handgun on the driver's floorboard of the Subject Vehicle. The firearm was protruding from the under the driver's side seat. The firearm was

subsequently fully identified as a Smith and Wesson SW40VE, .40 caliber, semi-automatic pistol, *see **Error! Reference source not found.***.  The pistol had one (1) round of .40 caliber ammunition in the chamber, and ten (10) additional rounds of .40 caliber ammunition in the magazine.  The magazine was marked with a capacity of at least thirteen (13) rounds.


*Figure 2 - Smith and Wesson SW40VE pistol*

5. A search was conducted on the vehicle.  When officers opened the trunk they immediately smelled and recognized an odor consistent with that which is emitted by liquid phencyclidine ("PCP").  A plastic apple juice bottle (marked as 240 milliliters) containing an amber liquid (suspected liquid PCP) was located in the trunk of the Subject Vehicle, along with fifty-six (56) half-ounce glass vials.  Your affiant recognizes these glass vials to be of the same variety which are most often used by dealers of PCP to package and distribute liquid PCP.


*Figure 3 - Empty half-ounce glass vials*

6. Officers performed a WALES/NCIC query of the Subject Vehicle's registration and observed that it is registered to Jermaine **FAIRNOT**, a black male, with a date of birth of 7/22/1979, and license number D1400020459 (corresponding to FBI # 431685HB4).

7. Officer Tso, who authored the police report CCN 22149423, described the suspected liquid PCP as being approximately 3.5 to 5 ounces. On October 24, 2022, your affiant retrieved the suspected liquid PCP and original container from MPD evidence in order to examine the evidence. The items were subsequently checked into Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") evidence. Your affiant learned that the First District property personnel had repackaged the suspected liquid PCP from the apple juice bottle into six (6) glass vials. Your affiant and ATF Special Agent Rebekah Moss subsequently weighed and photographed the six vials as well as the apple juice bottle.



*Figure 4 - Original apple juice container (left); six glass vials with suspected PCP (middle); empty glass vial (right)*

8. The six vials were weighed together and observed to be approximately 224.1 grams. An empty glass vial of the same variety was weighed and observed to be approximately 18.7 grams. Therefore, after subtracting the weight six empty vials (112.2 grams), the suspected liquid PCP weighed approximately 111.9 grams.

9. Despite the packaging, while weighing and photographing the suspected liquid PCP your affiant and Special Agent Moss were able to smell an odor consistent with that emitted by liquid PCP emanating from the amber liquid. Due to the dangerousness of liquid PCP (it can be absorbed through the skin), the suspected liquid PCP was not handled further or removed from the glass vials. For the same reasons law enforcement policy is to not perform field tests on suspected PCP.

10. On October 28, 2022, your affiant interviewed Officer Hugee. Officer Hugee advised that a thorough search of the vehicle revealed only mail matter and other documentation belonging to Jermaine **FAIRNOT**. Officer Hugee advised that there was no obvious evidence of any other occupants. Officer Hugee advised that he did not observe any tobacco flake substance inside the apple juice bottle which initially contained the suspected liquid PCP.

11. In your affiant's training and experience, the amount of suspected PCP recovered in this case vastly exceeds that which would normally be associated with personal consumption.

If there had been tobacco flake substance, it would be more consistent with selling PCP by dipping individual cigarettes into the liquid and then selling it as a loose cigarette (the most common method by which users purchase PCP in your affiant's training and experience). Instead, the large quantity of suspected liquid PCP in conjunction with the fifty-six empty half-ounce vials suggests possession with intent to distribute in large quantities (likely to other subjects who themselves are also dealing PCP).

12. Your affiant requested and obtained video from a MPD crime camera in the 1200 block of Canal St SW, as well as video footage from the Greenleaf Recreation Center cameras. Your affiant reviewed the recreation center footage and observed the following. At approximately 1923 hours, the Subject Vehicle backs into the parking space adjacent to the recreation center.



*Figure 5 - Subject Vehicle backing in*

13. The Suspect, the sole occupant of the Subject Vehicle, exits the vehicle and appears to begin using a cell phone. The Suspect is wearing a black hooded sweatshirt with a circular emblem and light colored jeans. This distinctive clothing allows the Suspect to be tracked through the different camera angles with ease.



*Figure 6 - The Suspect appearing to lean on the Subject Vehicle (left); the Suspect using a cell phone (right)*

14. Your affiant reviewed the entire time period from 1923 hours, until the police arrive (approximately 2045 hours). At approximately 1947 to 1956 hours, the Suspect can be seen appearing to search the Subject Vehicle. In particular, he appears to be moving around inside the driver's seat while manipulating a bright light source (e.g. flashlight feature on a phone or a flashlight) and then he gets in the rear driver's side door and also appears to search that area. At approximately 2009 hours, a nearby police vehicle activates the flashing lights and the Suspect exits from the driver's seat of the Subject Vehicle and walks away into the park. The Suspect later returns to the vehicle. The Suspect enters and exits the Subject Vehicle numerous times through the driver's door, the front passenger's door, and the rear driver's side door. Your affiant did not observe the Suspect, or anyone else, opening the trunk of the Subject Vehicle. Although the vehicle is unattended for various period of time, your affiant was unable to find evidence of anyone else entering the vehicle other than the Suspect during the relevant time frame.

15. At approximately 2045 hours, a marked MPD police vehicle, consistent with Officer Hugee's Dodge Charger, points the spotlight at the cars parked along the edge of the circle in the rear of the recreation center. At the time, the Suspect is seated in the driver's seat of the Subject Vehicle. The Suspect then exits the Subject Vehicle and he and the other two unknown subjects near the back of the Subject Vehicle walk away into the park area. Officer Hugee drives to the rear parking lot, to the south of the circle location, and shortly thereafter comes back to where the Subject Vehicle is located. At approximately 2047 hours, Officer Hugee looks inside the Subject Vehicle with his flashlight and appears to locate the handgun on the driver's floorboard.

16. Your affiant also tracked the Suspect's movements around the recreation center at various times during the relevant time period. At times, as the Suspect approaches various cameras, the cameras capture high quality images of the Suspect and the Suspect's face. Your affiant compared the images with the most recent photographs available of the registered owner of the vehicle, Jermaine FAIRNOT, a black male, with a date of birth of 7/22/1979, PDID # 471060, and FBI # 431685HB4. Your affiant observed that the Suspect and Jermaine FAIRNOT are consistent in appearance.

17. A WALES/NCIC check of Jermaine FAIRNOT's biographical information revealed that he is presently on supervised release. FAIRNOT is being supervised by the United States Probation Office for the District of Columbia. On October 28, 2022, your affiant sent an email to FAIRNOT's Probation Officer. The email had three still photos from the recreation center surveillance system of the Suspect (*see Figure 7*) and also six (6) short video clips from the same surveillance system, each showing the Suspect walking around the recreation center. The email posed the question: "Can you take a look at these video clips and see if you can recognize the individual depicted below? The clips have several different angles of his face."



*Figure 7 - Stills of the Suspect from recreation center video*

18. Your affiant then called the United States Probation Officer and introduced himself and explained that he had just sent the Probation Officer an email and would like to see if the Probation Officer could identify the person depicted. The Probation Officer received the email while the Probation Officer was on the phone with your affiant. Upon looking at the email and reviewing the contents, the Probation Officer immediately stated, "That's Mr. **FAIRNOT**!" It was clarified that the Probation Officer was referring to Jermaine **FAIRNOT**, a black male, with a date of birth of 7/22/1979, PDID # 471060, and FBI # 431685HB4. Upon being asked what the Probation Officer's confidence level was, the Probation Officer advised that its confidence level was high and that the Suspect was, "Exactly him" (**FAIRNOT**). The Probation Officer advised your affiant that it sees **FAIRNOT** pretty often, approximately once every thirty (30) days, and had seen **FAIRNOT** as recently as October 12, 2022.

19. Your affiant performed a criminal background check on **FAIRNOT** using various law enforcement databases and observed the following. **FAIRNOT** has a prior conviction in the District of Columbia Superior Court case 1999 FEL 002383, for a violation of 48 D.C. Code § 904.01(a)(1)—Possession with Intent to Distribute Cocaine—which is a crime punishable by imprisonment for a term exceeding one year (**FAIRNOT** received two years of probation under the Youth Rehabilitation Act). **FAIRNOT** has a prior conviction in the District of Columbia Superior Court case 2002 FEL 002605, for a violation of 48 D.C. Code §§ 904.01(a)(1) and 904.07a—Unlawful Possession with Intent to Distribute a Controlled Substance (Heroin) in a Drug Free Zone—for which **FAIRNOT** received 48 months imprisonment and 36 months supervised release. **FAIRNOT** has a prior conviction in the United States District Court for the District of Columbia for a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)—"Unlawful Possession with Intent to Distribute a Detectable Amount of Phencyclidine"—for which

he received a sentence of 30 months imprisonment and 36 months of supervised release (for which he is still being supervised).

20. Your affiant is aware that it is unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition under 18 U.S.C. § 922(g)(1) and that the Smith and Wesson SW40VE and .40 caliber ammunition were manufactured outside of the District of Columbia and therefore these items traveled in interstate commerce.

21. Based on the above information there is probable cause to believe that on October 14, 2022, within the District of Columbia, Jermaine **FAIRNOT** committed the following offenses:

- Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1);

- Unlawful Possession with Intent to Distribute One Hundred Grams or More of a Mixture or Substance Containing a Detectable Amount of Phencyclidine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iv); and

- Unlawful Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of Title 18 United States Code, Section 924(c).

_____
DETECTIVE BRIAN MCCARTHY
ATF TASK FORCE OFFICER

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone, this _3rd__ day of November, 2022.

_____
MOXILA A. UPADHYAYA
U.S. MAGISTRATE JUDGE